**EXHIBIT A – SETTLEMENT AGREEMENT**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CLAIRE BROU, et al.,        ) <br>       ) <br>       Plaintiffs,    ) <br>       ) <br> v.       ) <br>       ) <br> FEDERAL EMERGENCY MANAGEMENT   ) <br> AGENCY, et al.,       ) <br>       ) <br>       Defendants.   ) <br>       ) | Case No.: 06-0838 <br><br> JUDGE DUVAL <br><br> MAGISTRATE JUDGE <br> KNOWLES |

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement" or "Agreement") is entered into between Plaintiffs Claire Brou, Darlene Crosby (next friend of P.D., a minor), Willie Foster, Donna Graffagnino, Carla Hagler, Robert Thomas Harris, Eugene Johnson, Victoria Sumrall, Terry West, Anita Wilson, Martha Bryant, Cherie LeBlanc, Ronald Levron, Wanda Newbill, and Dora Villanueva, on behalf of themselves and a class of other similarly situated disabled persons who have been displaced by Hurricanes Katrina and Rita ("Plaintiffs"), and the defendants Federal Emergency Management Agency ("FEMA"), Department of Homeland Security ("DHS"), Michael Chertoff, Secretary, Department of Homeland Security, and David Paulison, Director, Federal Emergency Management Agency, ("Defendants"). Plaintiffs and Defendants are referred to herein as "the Parties."

On February 17, 2006, Plaintiffs filed this action in the United States District Court for the Eastern District of Louisiana (the "District Court"). Plaintiffs allege in their complaint that the Defendants have violated section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794(a), the Fair Housing Act ("FHA"), 42 U.S.C. § 3604, and the Stafford Act, 42 U.S.C.

§ 5170 *et seq.*, by denying equal and meaningful access to the temporary housing assistance program for victims of Hurricane Katrina and Hurricane Rita who have disabilities. Defendants maintain that FEMA's temporary housing assistance program has been and continues to be operated in compliance with all applicable laws, deny that they have violated any of the above statutes, and further deny that plaintiffs are entitled to any relief in this action.

The Parties mutually desire to resolve all of the claims asserted by Plaintiffs in this action without the need for further litigation, and without any admission of liability by any party. Accordingly, the Parties hereby agree to compromise, settle and resolve all of the claims asserted by Plaintiffs in this action on the following terms and conditions:

1.     **Definitions:** The following terms, when used in this Settlement Agreement, shall have the following meanings:

Section 1.1  "Person with a disability" means a "qualified individual with a handicap" and a "qualified individual with a disability" as those terms are defined in Section 504, 29 U.S.C. §§ 705(20) and 794(a), and FEMA's implementing regulations, 44 C.F.R. § 16.103; and has a "handicap" as that term is defined in the FHA, 42 U.S.C. § 3602(h).

Section 1.2  "Applicant" means a person who has applied for assistance under the Stafford Act pursuant to 42 U.S.C. § 5174.

Section 1.3  "Unit" means manufactured housing of any kind, and includes a travel trailer, mobile home, or Park model trailer.

Section 1.4  "Currently in Stock" means in FEMA's possession or subject to its control as of the date a call, which would result in the provision of the particular unit in question, is made to the special toll-free number referred to in paragraph 5.

Section 1.5 "UFAS" means the Uniform Federal Accessibility Standards published at 49 Fed. Reg. 31528 (Aug. 7, 1984) and http://www.access-board.gov/ufas/ufas-html/ufas.htm.

Section 1.6 "Accessible Unit" means (A) a Unit that complies with all UFAS requirements except for those standards that have been amended, modified or waived by HUD; or (B) accessible mobile homes or Park Model trailers which do not satisfy all UFAS requirements but have been altered or modified to accommodate the accessibility needs of Class Members.

Section 1.7 "Install" or "Provide" means either (i) to deliver an Accessible Unit, with any necessary modifications to ensure that it is, in fact, an Accessible Unit, to the Person With a Disability requesting the Unit or (ii) to make the modifications to a Unit that has already been delivered to, or is currently occupied by, a Person With a Disability, such that the Unit is an Accessible Unit.  However, when a Unit is installed on a private or commercial site that is not operated by FEMA, the terms "Install" or "Provide" shall not include the provision of fully functioning utilities other than the completion of all steps that FEMA normally takes to facilitate the provision of such utilities.  This section refers solely to FEMA's obligations under this Agreement and shall not waive, alter, or otherwise affect the scope of FEMA's obligations under 42 U.S.C. § 5174.

2.      **Persons Covered By Agreement:**  The class of persons covered by and eligible to obtain the benefits of this Agreement (hereinafter referred to as "Class Members") is defined as all individuals who:

> A.      As of August 29, 2005, resided in Louisiana or Mississippi in areas declared to be Federal Disaster Areas as a result of Hurricane Katrina; or as of September 24, 2005, resided in Louisiana in areas declared to be Federal Disaster Areas as a result of Hurricane Rita; and

B.    Were displaced from their pre-disaster primary residence or whose pre-disaster primary residences have been rendered uninhabitable as a result of damage caused by Hurricane Katrina or Hurricane Rita; and

C.    Are in receipt of, or who qualify or will qualify for, direct assistance pursuant to 42 U.S.C. § 5174(c)(1)(B); and

D.    Are Persons with Disabilities; and

E.    Have informed or will inform Defendants of their need for a Unit that accommodates their disabilities, but who have not received a Unit with the requested accessibility features.

3.    **Claims Covered By The Agreement:** The claims compromised, settled and resolved by this Agreement, which are hereinafter referred to as the "Class Claims," include any individual or class-wide disability discrimination claim, administrative charge, demand, grievance, complaint, right and cause of action of any kind, known or unknown, by a Class Member against FEMA or DHS for monetary, injunctive or equitable relief and/or for attorney's fees, arising from any events, acts, omissions, policies, practices, procedures, conditions or occurrences concerning or relating to FEMA's direct temporary housing assistance program that were raised in paragraphs 159-164 of the Complaint filed in this action on February 17, 2006, or such claims that arise within 210 days after the beginning of the Notice Period described in paragraph 4 below.

4.    **Accessibility Notice:** Over a thirty day period commencing 10 days after the Court enters an Order finally approving this Agreement and ending 40 days after the date of such Order (hereinafter the "Notice Period"), FEMA shall disseminate an informational notice in the form prescribed in Attachment A hereto regarding the provision of temporary housing that is accessible to Persons with Disabilities ("the Accessibility Notice"). The purpose of the Accessibility Notice is to emphasize that FEMA is committed to ensuring that individuals with disabilities have meaningful access to its temporary housing assistance programs, to ensure that

-4-

the needs of victims of Hurricane Katrina and Hurricane Rita with disabilities for temporary housing that is accessible have been appropriately addressed, and to describe the procedures to be followed by Class Members who seek to have FEMA address any unmet accessibility needs.

    **A.**    **Dissemination of the Accessibility Notice:** The Accessibility Notice shall be disseminated and publicized by FEMA during the Notice Period as follows:

    (1) FEMA's National Processing Service Center in Hyattsville, Maryland shall send one copy of the Accessibility Notice by United States mail to the last known address of each Applicant who: (1) was displaced by Hurricane Katrina or Hurricane Rita, (2) has been determined by FEMA to be eligible for temporary housing assistance, and (3) either has requested but not yet received, or is currently housed in, a FEMA-provided mobile home or trailer.

    (2) At the inception of the Notice Period, FEMA shall issue a press release that incorporates the substance of the Accessibility Notice, and shall distribute it to the media listed in Attachment B. In addition, throughout the Notice Period, FEMA shall include information contained in the Accessibility Notice on its website, in combination with relevant contact information for those seeking further information.

    (3) At the inception of the Notice Period and 90 days thereafter, FEMA shall provide a public service announcement that summarizes information contained in the Accessibility Notice to the radio and television stations listed in Attachment B.

    (4) Copies of the Accessibility Notice shall be available for distribution at each FEMA Disaster Recovery Center in Louisiana and Mississippi.

(5) FEMA shall also ensure that the Accessibility Notice is provided to case management workers retained pursuant to the agreement between FEMA and the United Methodist Committee on Relief.

5. **Procedure To Be Followed By Class Members Who Seek To Have FEMA Address Unmet Accessibility Needs:** On or before the date upon which the Notice Period commences, FEMA shall establish a special toll-free number for each of the Joint Field Offices ("JFO") in Louisiana and Mississippi for the purpose of receiving calls made in response to the Accessibility Notice described above ("the special toll-free number"). The Louisiana and Mississippi JFO numbers shall be staffed initially with 30 persons and 10 persons, respectively, all of whom shall have some previous experience in conducting pre-placement interviews. The number of FEMA personnel staffing each special toll-free number may be increased or decreased by FEMA over time as warranted by the call volume received. The special toll-free number shall be staffed from 8:00 a.m. to 6:00 p.m. Monday through Saturday (except holidays) during the nine-month period following the commencement of the Notice Period. FEMA will inform individuals staffing its toll-free numbers, other than the special toll-free numbers, about the existence of the special toll-free numbers, and instruct such individuals to provide the special toll-free numbers to callers who may have accessibility needs. To receive the benefits of this Settlement Agreement, Class Members who seek to have FEMA address any unmet accessibility needs must contact FEMA at the special toll-free number no later than 180 days after the Notice Period ends, and request that FEMA address any unmet accessibility needs.

6.     **Responsibilities of FEMA Intake Personnel Receiving Responses to Accessibility Notice**

A.     **Information to be obtained by Intake Personnel:** FEMA personnel answering the special toll-free number (hereinafter the "Intake Personnel") shall obtain information sufficient to enable FEMA to determine whether each caller is a Class Member as defined in paragraph 2 of this Agreement, or is calling on behalf of a Class Member. For each caller who is a Class Member or who calls on behalf of a Class Member, the Intake Personnel shall use the screening questions in Attachment C to this Agreement to obtain information regarding the Class Member's disabilities, accessibility needs, and current housing arrangements that is sufficient to enable FEMA to determine what further actions, if any, FEMA needs to take to address each Class Member's accessibility needs. With assistance from plaintiffs' counsel, FEMA shall develop or modify existing screening protocols and criteria designed to enable the Intake Personnel to identify the accessibility needs of callers and the type of Unit and modifications necessary to address their accessibility needs. FEMA will also train the Intake Personnel on the use of the screening protocols and criteria and any modifications.

B.     **Initial determinations by Intake Personnel:** Based upon the information provided by callers, FEMA shall determine:

(1) whether the Class Member currently resides in temporary housing that already satisfies or can be altered or modified to satisfy the Class Member's accessibility needs;

(2) whether the Class Member's need for temporary housing that is accessible can be accommodated by providing rental assistance;

(3) whether the Class Member's need for temporary housing that is accessible can be accommodated by Providing a Unit at a FEMA group site or commercial site that is available for immediate occupancy;

(4) whether FEMA needs to Provide a Unit to address the Class Member's accessibility needs and, if so, the model, type and size of the Unit required, any modifications that must be made to the Unit, and the proposed site or location where the Unit is to be Installed; and

(5) whether the Class Member needs financial assistance to pay for a hotel or some other type of temporary housing until such time as an accessible mobile home or trailer can be provided by FEMA.

Class members may not be required to accept or wait for housing that meets their accessibility needs, if they prefer non-accessible housing.

C.    **Information to be provided by FEMA Intake Personnel to Class Members:** FEMA's Intake Personnel shall advise each Class Member who calls the special toll-free number what further actions, if any, FEMA intends to take to address the Class Member's accessibility needs.  The information described in this paragraph shall be given to the Class Member orally within five calendar days of the Class Member's call.

(1) If FEMA determines that the temporary housing unit that is currently occupied by the Class Member can be altered or modified to satisfy the Class Member's accessibility needs, FEMA's Intake Personnel shall provide the Class Member with an estimated completion date which shall be:

(a)    within 30 days after the Class Member contacts FEMA's Intake Personnel if the requested alterations or modifications are limited to the installation of an external ramp, external steps, or grab bars meeting UFAS standards;

(b)    up to 60 days after the Class Member contacts FEMA's Intake Personnel for any other alterations or modifications, depending on

the nature of the alteration or modification sought and the volume of requests received by FEMA.

(2)  If FEMA determines that the Class Member's need for temporary housing that is accessible can be accommodated by providing rental assistance, FEMA's Intake Personnel shall provide the Class Member with information regarding the procedures to be followed in obtaining such assistance.

(3)  If FEMA determines that the Class Member's need for temporary housing that is accessible can be accommodated by Providing an existing mobile home or trailer at a FEMA group site or commercial site that is available for immediate occupancy, FEMA's Intake Personnel shall provide information regarding the location of the group site or commercial site and the type of unit(s) available for immediate occupancy at such site.

(4)  If FEMA determines that a mobile home, Park Model trailer, or other travel trailer should be Provided to address the Class Member's accessibility needs, FEMA's Intake Personnel shall advise the Class Member of the model, type and size of the mobile home or trailer to be Provided, and the proposed site or location where the mobile home or trailer is to be Installed.  If the proposed site is on privately owned property, FEMA's Intake Personnel shall advise the Class Member that FEMA can install temporary housing on the site only if FEMA determines that the property is suitable for temporary housing.  FEMA's Intake Personnel shall provide the Class Member with an estimated installation date for any mobile home or trailer to be Installed which may range up to 90 days after the Class Member contacts FEMA's Intake Personnel depending upon whether a Unit that meets the Class Member's accessibility needs is Currently in Stock, whether a site suitability determination is necessary before the Unit can be Installed, and the volume of requests received by FEMA.  If FEMA subsequently determines that the requested

-9-

Unit cannot be Provided because the site is not suitable for temporary housing, FEMA's Intake

Personnel shall notify the Class Member of FEMA's determination, and advise the Class Member

of any alternative temporary housing available that satisfies the Class Member's accessibility

needs.

(5) If FEMA determines that a Class Member needs financial assistance to pay for a hotel

or some other type of temporary housing until such time as an accessible mobile home or trailer

can be Provided, FEMA's Intake Personnel shall make arrangements to provide a hotel or some

other type of temporary housing assistance for Class Members who are waiting for an Accessible

Unit and who have no other place to stay while they are waiting.

(6) If FEMA denies a request for direct housing assistance or for modification of a Unit in

whole or in part, and if FEMA has not already notified the caller in writing of such denial, FEMA

shall, within 15 days thereafter, notify the caller in writing of such denial, the reasons for the

denial, and the Complaint Procedures available under paragraph 8 of this Agreement.

**D.     Records to be maintained by FEMA's Intake Personnel:**  FEMA's Intake

Personnel shall create a record reflecting:  (1) the name, FEMA number, current and pre-disaster

address, and current telephone number of each Applicant that contacts FEMA on the special toll-

free number, (2) the date and subject matter of each such contact, and whether the contact was

initiated by the caller or by FEMA (3) the type of disability, if any, identified by the Applicant, (4)

a description of any accessibility needs identified by the Applicant, (5) FEMA's determination

concerning whether the Applicant is a Class Member; (6) a description of what further actions, if

any, FEMA intends to take to address each Class Member's accessibility needs; (7) the estimated

completion date(s) for any such actions; and (8) any interim arrangements made for a hotel or

other temporary housing that is accessible.  The record created by FEMA's Intake Personnel shall

be updated to reflect any change in address or telephone number, the date, location, and type of Unit actually delivered, the date and type of any modifications completed, and the reasons for any significant unforeseen delays in processing the Class Member's request.

7. **Provision of Accessible Units:** FEMA shall notify the specially designated contractor selected pursuant to paragraph 11 of this Agreement of the estimated completion date provided to each Class Member under paragraph 6 above, and shall require that the Contractor use its best efforts to provide an Accessible Unit and complete all necessary modifications on or before the completion date specified.

A. **Information to Plaintiffs' Counsel:** FEMA will provide Plaintiffs' Counsel with six (6) bimonthly reports, beginning sixty (60) days after the date of the Court's order approving the Settlement Agreement, and ending one year after approval, which shall contain the following information, separately for Louisiana and Mississippi:

(1) cumulative number of callers to the Special 800 number who were determined to be Class Members or calling on behalf of Class Members;

(2) cumulative number of households of callers FEMA determined to need interim hotel or rental assistance (assistance provided until an accessible unit becomes available) after their call, and cumulative number who received such assistance after their call;

(3) cumulative number of households of callers determined to need an accessible unit, other than the unit they were occupying at the time of the call;

(4) of the number above in paragraph 7.A.(3), the cumulative number of Accessible Units Provided to callers within 30, 60, 90, and over 90 days of the first call, respectively;

(5) cumulative number of households of callers determined to need modifications to a unit currently occupied;

(6) of the above in paragraph 7.A.(5), the cumulative number of households of callers Provided with modifications within 30, 60, 90, and over 90 days of the first call, respectively;

(7) cumulative number of households of callers determined to need rental assistance rather than an accessible unit;

(8) of the above in paragraph 7.A.(7), cumulative number of households of callers who received rental assistance after their call.

**B.    Notification by FEMA of Inability to Meet Time Frames:** If, for reasons beyond the control of FEMA, it appears to FEMA that the timeframes described above in paragraph 6.C. will not be met for a significant number of Applicants, FEMA will notify Plaintiffs' counsel in writing, with an explanation of the reason why such timeframes will not be met. The Parties will then confer within ten (10) days of the receipt of such notice and attempt to reach agreement.

**8.    Complaint Procedure:** Callers to the special toll-free number will be instructed to call the special toll-free number back if they have complaints. If their complaint is that a Unit or modifications provided them are different than what they were supposed to receive, or that they were not Provided within the estimated time frame, the Intake Personnel shall attempt to resolve the complaint. If their complaint is that they disagree with FEMA's actions or proposed actions under paragraphs 6 or 7 above, including a determination that they are not Class Members, they shall be informed that they may ask for a supervisor to review the determination and/or proposed action, and such a review will be provided. Personnel at the toll-free number shall attempt to resolve the complaint. If they have not resolved the complaint within ten days, personnel at the toll-free number shall refer the complaint to the Ombudsperson and provide the

complainant with the address and telephone number of Plaintiff's counsel.

9.      **Ombudsperson:** FEMA shall appoint an Ombudsperson to serve as a liaison with Persons with Disabilities, and to resolve complaints referred to the Ombudsperon as set forth below.  The Ombudsperson shall be responsible for monitoring and, as appropriate, recommending improvements to FEMA's efforts to address the special needs of people with disabilities.  Insofar as necessary to ensure that accessible mobile homes and/or trailers are provided to Class Members on a timely basis, and subject to the oversight of FEMA's contracting officer, the Ombudsperson shall be authorized to provide direction to FEMA's contracting officer technical representative for the contract entered into with the special designated contractor selected by FEMA pursuant to paragraph 11 of this Agreement.  Referrals to the Ombudsperson:  (A) shall be made by FEMA Intake Personnel who, after consultation with supervisory officials, determine that they are unable to resolve a Class Member's complaint within ten days; or (B) may be made by attorneys or other representatives of advocacy/community groups that are providing assistance to Class Members.

A.      **Information to Plaintiffs' Counsel:**  Beginning sixty (60) days after the date of the Court's order approving this Settlement Agreement, and ending one year after approval, FEMA shall provide Plaintiffs' Counsel with six (6) bimonthly reports, separately for Louisiana and Mississippi, which shall contain, for each complaint referred to or received by the Ombudsperson, the information recorded by FEMA's Intake Personnel regarding the complainant, pursuant to 6.D. above, and the subject of the complaint, for example, whether it concerned:  (1) FEMA's determination that an individual caller is not a Class Member; (2) FEMA's provision of (or failure to provide) accessible temporary housing while the caller was waiting for an Accessible Unit; (3) a Unit that was not delivered, altered, or modified on or

before the estimated completion date; (4) a Unit that was not Provided in the location desired by the caller; or (5) a disagreement with the type of modification or Unit FEMA determined would be Provided.  In addition, FEMA shall identify the number of complaints in each of the above categories that:  (a) have been resolved to the satisfaction of the complainant; (b) have been resolved by FEMA in a manner that has not been accepted by the complainant; or (c) remain unresolved at the end of the reporting period.  Upon request, FEMA shall provide to Plaintiffs' counsel full details of any complaint received by the Ombudsman, including, in addition to the above information, the date the Ombudsman received the complaint, how the complaint was resolved, the date of such resolution, and how to contact the complainant.

10.    **UFAS Trailers:**  FEMA shall require that a minimum of 10% of all Units ordered on or after June 1, 2006 for use as temporary housing for victims of Hurricane Katrina or Hurricane Rita shall comply with the Uniform Federal Accessibility Standards (UFAS) subject to any amendment, modification or waiver of any UFAS standard which may be adopted or approved by the Department of Housing and Urban Development (HUD).  At least 5% of all Units ordered on or after June 1, 2006 for use as temporary housing for victims of Hurricane Katrina or Hurricane Rita shall be UFAS-compliant Park Models with the remainder allocated as needed between UFAS-compliant mobile homes and travel trailers.  If UFAS-compliant Units are not available or if there is any delay in the projected date for delivery of UFAS-compliant trailers, and with the prior written consent of plaintiffs' counsel, FEMA may instead satisfy the requirements of this paragraph by ordering accessible mobile homes or Park Model trailers which do not satisfy all UFAS requirements but can be altered or modified to accommodate the accessibility needs of Class Members.

11.    **Contractor for Class Members:**  To ensure that Accessible Units are Provided

-14-

on a timely basis to Class Members who respond to the Accessibility Notice, FEMA shall retain a

separate designated contractor for the exclusive purpose of providing all materials, labor,

equipment and support services such as required permitting and local inspections for installation

of UFAS compliant manufactured homes and travel trailers.  FEMA shall require that the

contractor selected for this purpose have personnel and resources sufficient to enable the

contractor to install UFAS-compliant mobile homes and trailers within the time periods specified

in paragraph 6.C. above.  FEMA shall award a contract conforming to the requirements of this

paragraph no later than 30 days after the Court enters an order finally approving this Agreement.

      **12.**    **Accessible Units at Group Sites:**  FEMA has undertaken a survey of all group

sites or emergency group sites operated by FEMA in Louisiana and Mississippi but not including

certain sites which are to be closed on or before September 30, 2006, or which are designated for

the exclusive use of individuals none of whom are disabled (hereinafter the "Group Sites").

Based on the results of the survey, FEMA will make whatever improvements are necessary to

ensure that: (A) the common areas of the Group Sites comply with UFAS requirements; (B) at

least 5% of the Units located in each Group Site containing 20 or more units (with the exception

of the Group Site at Groom Road, known as Renaissance Village) are Accessible Units; and (C)

at least 5% of the aggregate total number of Units located on Group Sites are Accessible Units.

FEMA shall not be required to involuntarily displace any person residing in a Group Site at the

time this Agreement is executed to comply with these requirements.

      **13.**    **Enforcement of Settlement Agreement:**  If any Class Member alleges that

Defendants have failed to comply with any provision of this Agreement, counsel for the Class

Member shall serve a written Notice upon Defendants' Counsel which shall specify which

paragraph(s) of this Agreement have allegedly been violated, shall describe all of the facts and

circumstances supporting the Class Member's claim that Defendants have violated this Agreement, and shall notify Defendants' Counsel that the Class Member intends to seek an order from the District Court to enforce compliance with the Agreement. The Defendants shall have a period of thirty days after receipt of such Notice to take appropriate action to resolve any claims of noncompliance. If such claims are not resolved within that thirty day period or if, prior to the expiration of such 30-day period, counsel for Defendants advise Plaintiffs' Counsel that no further action will be taken by Defendants, the Class Member may apply to the District Court for an order compelling compliance with this Agreement. If Defendants allege that Plaintiffs have failed to comply with any provision in this Agreement, the same procedures shall apply.

It is understood and agreed by the Parties that the time frames specified in paragraphs 6.C.(1) and 6.C.(4) of this Agreement are estimates and not deadlines. Any alleged failure by Defendants to Install an Accessible Unit within the period prescribed in paragraph 6.C.(4) of this Agreement, or to alter or modify a temporary housing unit within the period prescribed in paragraph 6.C.(1), is not, by itself, a violation of this Agreement, and shall not, standing alone, provide a basis for any relief under this paragraph. Instead, any such claims shall be resolved in accordance with the procedures prescribed in paragraph 14 below.

**14.    Applications for Further Relief:** If any Class Member alleges that FEMA has failed to Install an Accessible Unit within the period prescribed in paragraph 6.C.(4) of this Agreement, has failed to alter or modify a temporary housing unit within the period prescribed in paragraph 6.C.(1), has denied him or her an Accessible Unit or modifications to make a unit accessible, has denied his or her desired location of a trailer, or has failed to provide assistance for temporary accessible housing until an Accessible Unit can be provided, counsel for the Class Member shall serve a written notice upon Defendants' Counsel which shall notify Defendants'

-16-

Counsel that the Class Member intends to seek further relief from the District Court and shall describe all of the facts and circumstances supporting the Class Member's claim. The Defendants shall have a period of thirty days after receipt of such Notice to take appropriate action to resolve the dispute, except in case of an emergency that poses a serious threat to the health or safety of a Class Member.

If the dispute is not resolved within that thirty day period or if, prior to the expiration of such 30-day period, counsel for Defendants advise Plaintiffs' Counsel that no further action will be taken by Defendants, or in the case of an emergency that poses a serious threat to his or her health or safety, the Class Member may apply for an order from the District Court compelling FEMA to provide an Accessible Unit to the Class Member, to alter or modify the Class Member's existing temporary housing unit to make it accessible, to Provide an Accessible Unit at a specific location, and/or to provide assistance for temporary accessible housing until an Accessible Unit can be provided. If the Court determines that FEMA has failed to Provide an Accessible Unit to the Class Member, to alter or modify the Class Member's existing temporary housing unit, to provide an Accessible Unit at a specific location, and/or to provide assistance for temporary accessible housing until an Accessible Unit can be provided, and further finds that such failure(s) violate Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), the Fair Housing Act, 42 U.S.C. § 3604, or the Stafford Act, 42 U.S.C. § 5170 et seq., the Court may enter an appropriate order granting further relief to the Class Member.

15.     **Attorney's Fees:** Defendants agree to pay plaintiffs' counsel $310,000 for attorneys' fees and expenses. Except as provided in the last sentence of this paragraph, payment of this amount shall represent full and final payment of any and all claims for attorneys' fees and costs related to this action. Plaintiffs explicitly waive any right to seek, and shall not be entitled to

recover any additional attorneys' fees or expenses for any time expended or to be expended by counsel monitoring compliance with this Agreement. Notwithstanding the foregoing, it is understood and agreed by the Parties that, in the event of a judicial determination that Defendants have failed to discharge any obligation under this Agreement, plaintiffs reserve the right to apply to the Court for an additional award of attorneys' fees and expenses directly relating to plaintiffs' application for such a judicial determination.

16.   **Non-Admission of Liability:** This Agreement does not constitute an admission of the merits of any position taken by any party to this litigation, nor of any liability by Defendants for the violation of any law, statute, regulation, or policy. Defendants expressly deny any wrongdoing or liability. In addition, this Agreement may not be introduced or used or admitted in any other judicial, arbitral, administrative, investigative or other proceeding of any kind or nature whatsoever as evidence of discrimination, retaliation, or any violation of the Rehabilitation Act, the United States Constitution, the common law of any jurisdiction, or any other federal, state or local law, statute, ordinance, regulation, rule or executive order, or any obligation or duty at law or in equity.

17.   **Agreement Contingent on Court Approval:** The commitments made by the Parties in this Agreement are contingent upon final approval of the Agreement by the District Court in accordance with the requirements of Rule 23(e)(1)(C) of the Federal Rules of Civil Procedure. In the event that final approval of the Settlement Agreement is not obtained or the Settlement Agreement is deemed null and void, nothing herein shall be deemed to waive any of the Class's claims or the Defendants' objections and defenses, and this Settlement Agreement shall not be admissible in any court regarding the propriety of class certification or regarding any other issue or subject of this case.

18.    **Settlement Hearing:**  Promptly after execution of this Agreement, but in no event later than ten days after this Agreement is signed by counsel for all Parties, the Parties will submit this Agreement (together with its Exhibits) to the Court and will apply for entry of an order (hereinafter the "Initial Order") in which the Court:

(A)    Preliminarily approves the terms of the settlement embodied in this Agreement as being fair, reasonable and adequate to the Class;

(B)    Provisionally certifies the class for settlement purposes only;

(C)    Approves the form of a Notice to Class Members ("Class Notice") informing them of the claims asserted in this action, a summary of the general terms and conditions of this Agreement, and of the date of the hearing set by the Court to determine whether the settlement is fair, reasonable and adequate;

(D)    Directs FEMA to disseminate the Class Notice to the Class Members by publication or such other means as the Court finds to be reasonable and in conformance with the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Constitution of the United States, and any other applicable law;

(E)    Schedules a Settlement Hearing to be held by the Court to determine if the proposed settlement of the litigation as contained in this Agreement should be approved as fair, reasonable and adequate and whether the Judgment approving the settlement should be entered;

(F)    Provides that any objections to (i) the proposed settlement contained in this Agreement; or (ii) entry of the Judgment approving the settlement shall be heard only if, on or before a date specified in the Class Notice, persons making objections file and serve on all Parties notice of their intention to appear (which will set forth each objection and the basis therefore) and copies of any papers in support of their position as set forth in the Order Notice; and

(G)    Provides that the Settlement Hearing may, from time to time and without further notice to the Class, be continued or adjourned by order of the District Court.

The Parties will request that, after notice is given, the Court hold the Settlement Hearing and finally approve the settlement of the litigation as set forth in this Agreement.

19.    **Release/Bar of Claims:**  In consideration of the commitments contained herein, and the benefits provided or to be provided hereunder, this Settlement Agreement shall fully

resolve, extinguish, and finally and forever bar, and the Representative Plaintiffs and other Class Members hereby release all claims described in paragraph 3 above, except as expressly provided in paragraphs 13 and 14 above. Upon final approval by the District Court, this Settlement Agreement shall be fully binding on, and fully extinguish and release the claims of, all Class Members and the Representative Plaintiffs, and may be pled as a full and complete defense to any subsequent action or other proceeding involving any person or party that arises out of the claims released and discharged by this Settlement Agreement.

20.     **Dismissal of Claims/ Retention of Jurisdiction:**  Upon final approval by the District Court of this Agreement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Parties hereby stipulate and agree to entry of a Final Judgment in the form annexed hereto as Attachment D dismissing all of plaintiffs' claims in this action with prejudice, except that the Court shall retain jurisdiction to enforce compliance with the terms and conditions of this Agreement in accordance with paragraph 13, and to hear and determine any applications for additional relief filed by any Class Member pursuant to paragraph 14 of this Agreement.

21.     **Reports to the Court:**  The Parties shall file a joint status report with the District Court six (6) months after final approval of this Agreement advising the Court of their progress in implementing the terms of the Agreement. The Parties shall file a final report when all of the Agreement's terms have been met and, upon the filing of such report, the Court's jurisdiction to enforce this Agreement shall terminate.

22.     **Rule of Construction:**  The Parties through their counsel have negotiated the terms of this Agreement. Any rule of construction providing that ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement. This Agreement shall be construed as if drafted by both Parties.

23.     **Waiver of Provisions:**  No provisions hereof can be waived unless done so expressly and in writing.  Express waiver of any one provision shall not be deemed a waiver of any other provision.

24.     **Entire Agreement:**  This Agreement contains the entire agreement between the Parties, and all previous understandings, agreements, and communications prior to the date hereof, whether express or implied, oral or written, relating to the subject matter of this Agreement, are fully and completely extinguished and superseded by this Agreement.  This Agreement shall not be altered, amended, modified, or otherwise changed except by a writing duly signed by the Parties hereto.

25.     **Collateral Use of Agreement Prohibited:**  The Parties have entered into this Agreement as a compromise measure to terminate this action and resolve all issues of controversy between them.  The terms of this Agreement, its substance, the negotiations leading up to the Agreement, and the information exchanged by the Parties in the course of those negotiations may not be offered, taken, construed or introduced as evidence for any purpose, either in this action or in any pending or subsequent proceeding of any nature, except that in any subsequent action involving the enforcement, construction, or application of this Agreement, a copy of the Agreement may be presented to verify its contents.

26.     **Headings:**  The headings in this Agreement are for the convenience of the Parties only and shall not limit, expand, modify, or aid in the interpretation or construction of this Agreement.

27.    **Notices under this Agreement:**  Copies of all notices required to be given to

Plaintiffs' Counsel under this Agreement shall be sent by e-mail, to the following persons:

> Nell Hahn
> Advocacy Center
> Director of Litigation and Systems Advocacy
> E-mail:  nhahn@advocacyla.org
>
> Melissa Losch
> Advocacy Center
> Managing Staff Attorney
> E-mail:  mlosch@advocacyla.org
>
> Cary LaCheen
> National Center for Law and Economic Justice
> New York
> E-mail: lacheen@nclej.org

Copies of all notices required to be given to Defendants' Counsel under this Agreement

shall be sent by e-mail, to the following persons:

> Diane Kelleher
> Civil Division
> Department of Justice
> Diane.Kelleher@usdoj.gov
>
> Darren Wall
> Office of Chief Counsel
> Federal Emergency Management Agency
> Darren.Wall@dhs.gov

28.    **No Third-Party Rights:**  This Settlement Agreement is not intended to, and does

not, create any third-party beneficiary rights or any other rights of any kind in any person, group,

or entity other than the Parties.

29.    **Governing Law:**  The Parties agree that the validity, construction, and

enforcement of this Settlement Agreement shall be governed by federal law.

**30.   Parties' Obligation to Defend Settlement Agreement:**   In the event this Settlement Agreement is challenged administratively or judicially, the Representative Plaintiffs, Class Counsel and the Defendants shall fully defend its lawfulness.

**31.   Privacy Act Information:**   Certain information to be provided to plaintiffs under paragraphs 6.D and 9 of this Agreement may be subject to the Privacy Act of 1974, 5 U.S.C. § 552a.  In accordance with the requirements of the Privacy Act, the Parties will request that the Court enter a Privacy Act Protective Order in the form prescribed in Attachment E hereto.  Each person designated by plaintiffs' counsel to receive information subject to the Privacy Act shall be required to execute an Acknowledgment as required by the Privacy Act Protective Order.

**32.   Binding Agreement:**   Undersigned counsel represent that they have the requisite authority to enter into this Settlement Agreement.  Subject to final approval by the District Court and any applicable law, this Settlement Agreement shall be binding on the Parties and their successors, assigns, representatives, and trustees.

33.   **Execution:** This Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which together shall be deemed one and the same instrument.

AGREED this 15th day of August, 2006.

_____
NELL HAHN
Director of Litigation and Systems Advocacy
Advocacy Center
600 Jefferson Street Suite 812
Lafayette LA 70501
Telephone:   (337) 237-7380
Facsimile:   (337) 237-0486
E-mail:  nhahn@advocacyla.org
Attorneys for Plaintiffs

_____
CARY LACHEEN
National Center for Law and Economic
Justice
275 Seventh Avenue, Suite 1506
New York, NY 10001-6708
Telephone: (212) 633-6967
Facsimile: (212) 633-6371
E-mail: lacheen@nclej.org
Attorneys for Plaintiffs

PETER KEISLER
Assistant Attorney General

JIM LETTEN
United States Attorney

GLENN K. SCHREIBER
Assistant United States Attorney

JOSEPH LOBUE
Assistant Director
Federal Programs Branch

_____
DIANE KELLEHER
Trial Attorney
Department of Justice
Civil Division, Room 7318
Post Office Box 883
Washington, D.C. 20044
Telephone:   (202) 514-4775
Facsimile:   (202) 616-8470
E-mail: Diane.Kelleher@usdoj.gov
Attorneys for Defendants

_____
DARREN WALL
Trial Attorney
Office of Chief Counsel
Federal Emergency Management Agency
500 C St., SW
Room 840
Washington D.C.
Telephone: (202) 646-4611
Facsimile: (202) 646-4536
E-mail: Darren.Wall@dhs.gov
Attorneys for Defendants

## List of Attachments

Attachment A – Accessibility Notice

Attachment B – Media Lists

Attachment C – FEMA Screening Questions

Attachment D – Proposed Final Judgment

Attachment E – Privacy Act Protective Order

**ATTACHMENT A**

<u>**Attachment A – Accessibility Notice**</u>

This notice is for people who have a disability or live with someone who has a disability.  Usually a person with a disability is being treated by a doctor.   To have a disability, you must have trouble:

- walking
- seeing
- hearing
- speaking
- breathing
- learning
- working, or
- doing another major activity.

A disability does not include short-term problems like a broken leg.  It also does not include a problem that is corrected, like someone who can see well with glasses.

If you or someone you live with has a disability, you may be able to get an accessible trailer from FEMA.  Depending on the type of disability, you may be able to get a trailer with–

- A ramp
- Enough turning space for a wheelchair
- An accessible shower or tub
- Grab bars in showers, tubs, and near toilets

If you or someone you live with has a disability and needs an accessible trailer, call FEMA at 1-800-XXX-XXXX, from 8:00 a.m. to 6:00 p.m., Monday to Saturday.  Tell FEMA what kind of disability you have and what you need to make a trailer accessible.

After you call, FEMA will tell you if it will

- Give you an accessible trailer
- Make changes in the trailer you have
- Help you find another place to live

FEMA will also tell you how long it will take.  It may take FEMA up to 90 days to deliver a trailer, or longer if you don't have a suitable place to put it.  If you already have a trailer, it may take up to 60 days to make the changes you need.

If you do not get an accessible trailer within these times, or you do not agree with FEMA's decision, please call 1-800-XXX-XXXX and FEMA will tell you how to obtain further assistance.

To obtain an accessible trailer within the times in this notice, you must contact FEMA at 1-800-XXX-XXXX before [date].

**ATTACHMENT B**

<u>Attachment B – Louisiana Media</u>

**Instructions:** For the Louisiana media list (down to "Multiple Station Radio"), the first line is the name of the media outlet, the second a contact person, the third the town where the office is located. The fax or email number is the fourth line—this is the way that the press release or PSA should be distributed. The fifth line is a telephone number to call for more information, if necessary.

## LOUISIANA NEWSPAPERS

**Advocate**
Fred Kalmbach *Managing Editor*
Baton Rouge, LA
Fax (225) 388-0371; fkallmbach@theadvocate.com
(225) 383-1111

**American Press**
Brett Downer *Editor-in-Chief*
Lake Charles, LA
news@americanpress.com
(337) 494-4080

**Courier**
Keith Magill *Editor*
Houma, LA
Fax (985) 857-2244; marlene.callahan@houmatoday.com; ATTN Marlene
985) 857-2222

**Daily Advertiser**
Chere Coen *Editor*
Lafayette, LA
Fax (337) 289-6443 ATTN Lisa Thibodeaux
(337) 289-6300

**Daily Iberian**
Steve Bandy *Editor-in-Chief*
New Iberia, LA
Fax (337) 367-9640; dailyiberian@bellsouth.net; ATTN Steven Landry
(337) 365-6773

**Daily Star**
Hammond, LA
Fax (985) 543-0006
(985) 254-7827

**Daily World**
Lisa Faust *Editor*
Opelousas, LA
Fax (337) 948-6572; Write "press release" as the subject
(337) 942-4971

**Natchitoches Times**
Carolyn Roy *Editor*
Natchitoches, LA
Fax (318) 352-7842; news@natchitochestimes.com
318) 352-3618

**News-Star**
Ken Stickney *Managing Editor*
Monroe, LA
Fax (318) 362-0273
(318) 362-0289

**Ruston Daily Leader**
Chuck Cannon *Editor*
Ruston, LA
leader@tcainternet.com
318) 255-4353

**Slidell Sentry-News**
Sandy Cunningham *Editor*
Slidell, LA
Fax (985) 893-1527 ATTN Sandy Cunningham
(985) 643-4918

**Southwest Daily News**
Carla Vastos *Editor*
Sulphur, LA
Fax (337) 528-3044
(337) 527-7075

**TheTownTalk**
Richard Sharkey *Editor*
Alexandria, LA
Fax (318) 487-6488
(318) 487-6397

**Times**
Alan English *Editor*
Shreveport, LA
diyles@gannett.com
(318) 459-3200

**Times-Picayune**
Renee Peck *Editor*
New Orleans, LA
sfinch@timespicayune.com
(504) 826-3300

**Associated Press - Baton Rouge, LA Bureau**
Melinda Deslatte *Reporter*
Baton Rouge, LA
Wrong number
504) 343-1325

**Associated Press - New Orleans, LA Bureau**
Charlotte Porter *Bureau Chief*
New Orleans, LA
Fax (504) 586-0531
(504) 523-3931

**Gannett News Service - Baton Rouge Bureau**
John Hill *Bureau Chief*
Baton Rouge, LA
Fax (225) 346-8729
225) 342-7333

**LOUISIANA TELEVISION**

**KALB-TV**
Sharyn Bowen *Program Director*
Alexandria, LA
Fax: (318) 449-4594
(318) 4452456

**KAQY-TV**
Doug Ginn *Program Director*
Monroe, LA
Fax: (318) 631-4195
(318) 6315677

**KATC-TV**
John Korbel *News Director*
Lafayette, LA
Fax: (337) 232-5282
(337) 2353333

**KLAX-TV**
Bob Kennon *News Director*
Alexandria, LA
Fax: (318) 473-9984
(318) 4730031

**KLFY-TV**
Mike Barras *General Manager*
Branch, LA
Fax: (337) 981-6533 Attn: News
(337) 9814823

**KLPB-TV**
Lisa Stansbury *Development Director*
Baton Rouge, LA
Fax: (225) 767-4277
(225) 7675660

**KLTL-TV**
Lisa Stansbury *Development Director*
Baton Rouge, LA
Fax: (225) 767-4277
(225) 7675660

**KNOE-TV**
Ken Booth *News Director*
Monroe, LA
Fax: (318) 325-3405
(318) 3888888

**KPLC-TV**
James Smith *News Director*
Lake Charles, LA
Fax: (337) 439-9905
(337) 4399071

**KSLA-TV**
Gaylon Reasons *News Director*
Shreveport, LA
Fax: (318) 677-6705
(318) 2221212

**KTAL-TV**
Jean Byrd *Public Service Director*
Shreveport, LA
Fax: (318) 629-7171
(318) 6296000

**KTBS-TV**
Randy Bain *Editor*
Shreveport, LA
Email: pressreleases@ktbs.com
(318) 8615800

**WAFB-TV**
Robert Chandler *News Assignment Editor*
Baton Rouge, LA
Email: mcraig@wafb.com
(225) 3839999

**WBRZ-TV**
John Pastorek *News Director*
Baton Rouge, LA
Email: news@wbrz.com
(225) 3872222

**WDSU-TV**
Joseph Schiltz *Promotion Director*
New Orleans, LA
Fax: (504) 679-0733
(504) 6790600

**WGNO-TV**
Catherine Koppel *Editor*
New Orleans, LA
Fax: (504) 619-6332 Attn: News Desk
(504) 5253838

**WLAE-TV**
John Pela *Station Manager*
New Orleans, LA
Fax: (504) 840-9838
(504) 8667411

**WVLA-TV**
Joyce Harvey *Program Director*
Baton Rouge, LA
Fax: (225) 768-9200
(225) 7663233

**WWL-TV**
Jimmie Phillips *Station Manager*
New Orleans, LA
Fax: (504) 529-6472 Attn: News Director
Email: pressrelease@wwltv.com
(504) 5294444

**WYES-TV**
Beth Arroyo Utterbac *Program Director*
New Orleans, LA
Email: ahedgepeth@wyes.org
(504) 4865511


**LOUISIANA RADIO**

**KCIL-FM**
Tanya West *News Director*
Houma, LA
Fax (985) 872-4403; ATTN Glen
(985) 8511020

**KDBH-FM**
George Sluppick *News Director*
Natchitoches, LA
Fax (318) 256-0950
(318) 2560555

**KEDG-FM**
Tony Brown *News Director*
Alexandria, LA
(318) 4200106

**KEZM-AM**
Bruce Merchant *General Manager*
Sulphur, LA
kezm1310am@structurex.net
(337) 5273611

**KJCB-AM**
Carol Thomas *Program Director*
Lafayette, LA
Fax (337) 235-9681; ATTN Carol Thomas
(337) 2334262

**KJIN-AM**
Tanya West *News Director*
Houma, LA
Fax (985) 872-4403; ATTN Glen
(985) 8511020

**KJLO-FM**
John Reynolds *news director*
Monroe, LA
Fax (318) 388-0569
(318) 388-2323

**KKGB-FM**
Craig Morrison *News Director*
Lake Charles, LA
Fax (337) 436-7278; ATTN Larry Leblanc
(337) 4393300

**KLSA-FM, KDAQ-FM**
Adam Giblin *Program Director*
Shreveport, LA; Alexandria, LA, Lufkin, TX
Fax (318) 797-5265
(318) 7975150

**KNOC-AM**
John Brewer *Operations Director*
Natchitoches, LA
Fax (318) 352-9598
(318) 3544000

**KNOE-AM**
**KNOE-FM**
*News Director*
Monroe, LA
Fax (318) 325-9466
(318) 3888888

**KPEL-AM**
Lafayette, LA
Fax (337) 234-7360
(337) 2336000

**KPEL-FM**
David Steel *Public Affairs Director*
Lafayette, LA
Fax (337) 233-2989
(337) 2322242

**KQID-FM**
Rick Stevens *News Director*
Alexandria, LA
Fax (318) 473-1960
(318) 4451234

**KQXL-FM**
Mya Vernon *Promotion Director*
Baton Rouge, LA
Fax (225) 928-1606
(225) 9261106

**KRJO-AM**
C.H. Murray *Station Manager*
Monroe, LA
Fax (318) 388-0569
(318) 388-2323

**KRRQ-FM**
Tony Burks *Program Director*
Lafayette, LA
Fax (337) 233-3779
(337) 2321311

**KRRV-FM**
Kathy Carsons *News Director*
Alexandria, LA
Fax (318) 442-2747
(318) 4437454

**KRVS-FM**
Lafayette/Lake Charles, LA
Dave Spizale, General Manager
Fax : (337) 482-6101 or EMAIL dspizale@krvs.org
1-800-892-6827

**KRVV-FM**
*News Director*
Monroe, LA
Fax (318) 388-0569
(318) 3221914

**KSMB-FM**
Bill *Producer*
Lafayette, LA
Fax (337) 233-3779
(337) 2321311

**KTDY-FM**
Mike Grimsley *General Manager*
Lafayette, LA
Fax (337) 234-7360
(337) 2322242

**KYKZ-FM**
Larry Beck *News Director*
Lake Charles, LA
Fax(337) 436-7278
(337) 4393300

**KZMZ-FM**
Kathy Carsons *News Director*
Alexandria, LA
Fax (318) 442-2747 ATTN Cindy
(318) 4437454

**KZWA-FM**
Charles Washam *News Director*
Lake Charles, LA
Fax (337) 433-8097
(337) 4919955

**WBOK-AM**
Annette Pete *Program Director*
New Orleans, LA
*contact info not available*

**WDGL-FM**
Ted Kelly *Program Director*
Baton Rouge, LA
Fax (225) 499-9800
(225) 3889898

**WGSO-AM**
Charles Travis *News Director*
Metairie, LA
Fax (504) 830-7200
(504) 8323555

**WIBR-AM**
Randy Chase *Program Director*
Baton Rouge, LA
Fax (225) 928-1606  Attn: Leah
(225) 9261106

**WJBO-AM**
Shauna Sanford *News Director*
Baton Rouge, LA
Fax (225) 231-1873 Attn: PSA's
(225) 2311860

**WLMG-FM**
Steve Suter *On-Air Anchor*
New Orleans, LA
Fax (504) 593-2099
(504) 5936376

**WRBH-FM**
New Orleans, LA
Fax (504) 899-1165 Attn: Jakie
(504) 8991144

**WRKF-FM**
Karen Anderson *News Director*
Baton Rouge, LA
Fax (225) 926-3105
(225) 9263050

**WSLA-AM**
Paul Mayoral *Promotion Director*
Slidell, LA
Fax (985) 649-9822
(985) 6431560

**WSMB-AM**
Craig Jacobes *General Manager*
New Orleans, LA
Fax (504) 593-2099
(504) 5936376

**WTIX-FM**
Bob DelGiorno *Sports Director*
Metairie, LA
Fax (504) 454-9002
(504) 4549000

**WWL-AM**
Craig Jacobes *General Manager*
New Orleans, LA
Email: WWLNewsroom@yahoo.com
(504) 5932100

**WWNO-FM**
David Srebnik *Program Director*
New Orleans, LA
Email: kanklam@uno.edu Attn: Karen Anklam
(504) 2807000

**WWOZ-FM**
David Freedman *General Manager*
New Orleans, LA
Email: events@wwoz.org
(504) 5681238

**WYLD-FM**
Monica Pierre *News Director*
New Orleans, LA
Fax: (504) 679-7343
(504) 6797300

**WYNK-AM**
Dick Lewis *General Manager*
Baton Rouge, LA
Fax: (225) 231-1873
(225) 2311860

**WYNK-FM**
Shauna Sanford *News Director*
Baton Rouge, LA
Fax: (225) 231-1873
(225) 2311860

## MULTIPLE STATION RADIO

**Instructions: Capstar, Citicasters, and Clear Channel are all one group= Total 22 stations in Louisiana.  To distribute to these stations in Louisiana, Fax: (225) 231-1879 Attn: Lori Hardeson, and state "Please send to all stations in Louisiana"**

### Capstar (10)
Licensee:
 CAPSTAR TX LIMITED PARTNERSHIP
Address:
 2625 S MEMORIAL DR, SUITE A
Address 2:

City:
 TULSA
State:
 OK
Zip Code:
 74129 - 2623
Phone Number:
 (918) 664-4581

**Citicasters (4)**
Licensee:  CITICASTERS LICENSES, L.P.
Address:  2625 S MEMORIAL DR, SUITE A
Address 2:
City:  TULSA
State:  OK
Zip Code:  74129 - 2623
Phone Number:  (918) 664-4581

**Clear Channel ( 8)**
Licensee:  CLEAR CHANNEL BROADCASTING LICENSES, INC.
Address:  2625 S MEMORIAL DR, SUITE A
Address 2:
City:  TULSA
State:  OK
Zip Code:  74129 - 2623
Phone Number:  (918) 664-4581

**For remaining multiple station broadcasters, please send to fax numbers or email addresses highlighted below, with instructions to distribute in appropriate markets:**

**Citadel (14)**
Citadel Licensee:  CITADEL BROADCASTING COMPANY
Address:  7201 W LAKE MEAD BLVD STE 400
Address 2:
City:  LAS VEGAS
State:  NV
Zip Code:  89128 - 8366
Phone Number:  (702) 804-5200
Baton Rouge (225) 926-1106
Fax: (225) 928-1606 Attn: Press Release

## Cumulus   (11)

Licensee:
 CUMULUS LICENSING LLC
Address:
 3535 PIEDMONT ROAD
Address 2:
 BUILDING 14, 14TH FLOOR
City:
 ATLANTA
State:
 GA
Zip Code:
 30305 -
Phone Number:
 (404) 949-0700
Lake Charles Market
Phone: (337) 439-3300
Fax: (337) 436-7287 NOTE: PSA –Send to all stations
Shreveport Market
Phone : (318) 549-8500
Fax:  (318) 549-8505 –Send to all stations

## La. Educational Television Authority  (10)

Licensee:  LOUISIANA EDUCATIONAL TELEVISION AUTHORITY
Address:  7733 PERKINS RD
Address 2:
City:  BATON ROUGE
State:  LA
Zip Code:  70810 -
Phone: (225) 767-5660
Fax: (225) 763-8710 Send to all stations

## Guarantee Broadcasting (8)

Licensee:  GUARANTY BROADCASTING COMPANY OF BATON ROUGE, LLC
Address:  929 GOVERNMENT ST STE B
Address 2:
City:  BATON ROUGE
State:  LA
Zip Code:  70802 - 6034
Phone Number:  (225) 383-0355
Fax: (225)499-9800 Attention Scotty Drake Please send to all stations

**Regent Broadcasting  (7)**
REGENT BROADCASTING OF LAFAYETTE, INC.
Address:
2000 FIFTH THIRD CENTER
Address 2:
511 WALNUT STREET
City:
CINCINNATI
State:
OH
Zip Code:
45202 -
Phone Number:
(859) 292-0030
La. Market Phone: (337) 233-6000 (Paul Sonnier)
Fax: (337) 234-7360 Attn: Carrie
Note: Please send to all stations

**Holladay (7)**
Licensee:  HOLLADAY BROADCASTING OF LOUISIANA, LLC
Address:  1109 HUDSON LANE
Address 2:
City:  MONROE
State:  LA
Zip Code:  71211 -
Phone Number:  (318) 322-1914
Fax: (318) 388-0569  Note: Send to all stations

**Apex  (6)**
Licensee:  APEX BROADCASTING, INC.
Address:  2294 CLEMENTS FERRY ROAD
Address 2:
City:  CHARLESTON
State:  SC
Zip Code:  29492 -
Phone Number:  (843) 972-1100
La. Phone: (337) 433-1641
Fax: (337) 433-2999 Attn: PSA Please send to all radio stations

**Entercom (6)**
Licensee:  ENTERCOM NEW ORLEANS LICENSE, LLC
Address:  401 CITY AVENUE
Address 2:  SUITE 809
City:  BALA CYNWYD
State:  PA
Zip Code:  19004 -
Entercom New Orleans 504-593-NEWS(6397)
Fax: 593-2099
Email: WWLNewsroom@yahoo.com


**Access one  (5)**
ACCESS.1 LOUISIANA HOLDING COMPANY LLC
Address:  1155 CONNECTICUT AVENUE NW
Address 2:  SIXTH FLOOR
City:  WASHINGTON
State:  DC
Zip Code:  20036 -
Phone Number:  (202) 861-0870
La. (318) 445-0800
Fax: (318) 445-1445

**Opus   (5)**
Licensee:  OPUS BROADCASTING ALEXANDRIA LLC
Address:  950 THIRD AVENUE
Address 2:  19TH FLOOR
City:  NEW YORK
State:  NY
Zip Code:  10022 -
Phone Number:  (212) 634-3376
La. Phone: (318) 487- 1035
Fax: (318) 487-1045 Attn: Steve Coco

**Communications Capital  (5)**
Licensee:  COMMUNICATIONS CAPITAL COMPANY II OF LOUISIANA, LLC
Address:  1111 MICHIGAN AVENUE
Address 2:  SUITE 301
City:  EAST LANSING
State:  MI
Zip Code:  48823 - 1096
Phone Number:  (517) 351-3222
KRUS phone: (318) 255-2530
Fax: (318) 255-5084 Attn: James Cooper

**Pittman (5)**
Licensee: PITTMAN BROADCASTING SERVICES, LLC
Address: 307 S. JEFFERSON AVENUE
Address 2:
City: COVINGTON
State: LA
Zip Code: 70433 - 3135
Phone Number: (337) 312-9792
Mandeville : 985-624-9452
Fax: 985) 624-9559 note: Please send to all stations

**Noe (4)**
Licensee: NOE CORP., LLC
Address: 1400 OLIVER ROAD
Address 2:
City: MONROE
State: LA
Zip Code: 71201 -
Phone: (318) 388-8888
Fax: (318) 325-9466 Attn: PSA

**Radio for the Blind and Handicapped (1)**
Licensee: RADIO FOR THE BLIND & HANDICAPPED, INC.
Address: 3606 MAGAZINE STREET
Address 2:
City: NEW ORLEANS
State: LA
Zip Code: 70115 -
Phone: 899-1144
Fax: 899-1165 Attn: Jackie

<u>**Attachment B – Non-Louisiana Media**</u>

<u>**Major Radio Markets**</u>

<u>**National**</u>

<u>**Entercom**</u>
ENTERCOM MEMPHIS
5904 Ridgeway Center Parkway
Memphis, TN 38120
Phone: (901)767-0104

<u>**Cumulus**</u>

Market : Beaumont  (6)
Address: 755 S. 11th Street Suite # 102 P. O. Box 870 Beaumont TX,77704
Tel.: 409-833-9421
Fax: 409-833-9296

Market : Houston (2)
Address: 2700 Post Oak Blvd Suite 2300 Houston Texas,77056
Tel.: 713-300-3500
Fax: 713-300-3585

Market : Lake Charles (6) (also listed in Louisiana Media list)
Address: 425 Broad Street Lake Charles LA,70601
Tel.: 337-439-3300
Fax: 337-433-7701

Market : Shreveport  (5) (also listed in Louisiana Media list)
Address: 270 Plaza Loop Louisiana Boardwalk Bossier City LA,71111
Tel.: (318) 549-8500
Fax: (318) 549-8505

Market : Nashville
Address: 10 Music Circle East Nashville TN,37203
Tel.: 615-321-1067
Fax: 615-321-5808

Market : Mobile (6)
Address: 2800 Dauphin Street Suite 104 Mobile AL,36606
Tel.: 251-652-2000
Fax: 251-652-2001

Market : Huntsville (4)
Address: 1717 Highway 72 East Athens AL,35611
Tel.: (256) 830-8300
Fax: (256) 232-6842

Market : Columbus/Starkville  Ms. (7)
Address: 601 2nd Avenue North Court Square Towers Columbus MS,39701
Tel.: 662-327-1183
Fax: 662-328-1122

**Clear Channel**
**Alabama (25)**
**Louisiana (11) (Note: send to Laurie Hardeson as per Louisiana media list)**
**Mississippi (4)**
**Texas (34)**
**Tennessee (22)**
Clear Channel Communications
200 E. Basse
San Antonio, TX 78209
Phone: 210-822-2828
Fax: 210-822-2299

**Citadel**
**Alabama (11)**
**Louisiana (16) (Note: these are also covered in the Louisiana media list)**
**Tennesee (10)**
7201 W. Lake Mead Blvd.
Suite 400
Las Vegas, NV 89128
Phone: (702) 804-5200
Fax us: (702) 804-5936

**Mississippi**

**Urban Radio (3)**
608 Yellowjacket Drive
Starkville, MS  39759
Phone:662.338.5424
Fax: 662.338.5436

**American Family Association (189)**
Licensee:  AMERICAN FAMILY ASSOCIATION  (189)
Address:  PO BOX 2440
Address 2:
City:  TUPELO
State:  MS
Zip Code:  38803 - 2440
Phone Number:  (662) 844-8888

**Mississippi Authority for Educational Television (14)**
3825 Ridgewood Road
Jackson MS 39211
601-432-6565
Fax: (601) 432-6927 attn: PSA

**Cumulus (8)**
Market : Columbus/Starkville  Ms. (7)
Address: 601 2nd Avenue North Court Square Towers Columbus MS,39701
Tel.: 662-327-1183
Fax: 662-328-1122

**Monterey (6)**
Licensee:  MONTEREY LICENSES, LLC
Address:  2511 GARDEN ROAD, BUILDING A
Address 2:  SUITE 104
City:  MONTEREY
State:  CA
Zip Code:  93940 -
Phone Number:  (831) 655-6350
          Gulfport  (228) 388-2001

**Texas**

**Capstar**
600 CONGRESS AVENUE
AUSTIN, TX 78701
Phone: (512) 340-7800
Fax: (512) 380-8501